**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**WILLIE E. BERRY, JR. (#354431)**                                **CIVIL ACTION**

**VERSUS**                                                         **NO. 25-363-JWD-EWD**

**JOHNNIE GORDEN, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 29, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WILLIE E. BERRY, JR. (#354431)** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-363-JWD-EWD** |
| **JOHNNIE GORDEN, ET AL.** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Complaint, filed by Plaintiff Willie E. Berry, Jr. ("Berry"), who is representing himself and who is confined at the Louisiana State Penitentiary in Angola, Louisiana ("LSP").[1] Based on the screening allowed by 28 U.S.C. § 1915(e) and required by 28 U.S.C. § 1915A, it is recommended that the following federal claims be dismissed with prejudice as legally frivolous and/or for failure to state a claim: all claims against Gary Westcott and Darrel Vannoy; the claim for failure to protect against William Smith; claims related to preservation of video footage for disciplinary board proceedings and/or the grievance process; and all claims of conspiracy and retaliation. It is further recommended that the Court decline to exercise supplemental jurisdiction over potential state law claims.

## I.    BACKGROUND

Berry filed this suit on April 28, 2025 against Johnnie Gorden ("Gorden"), William Smith ("Smith"), Darrel Vannoy ("Vannoy"), and Gary Westcott ("Westcott"), alleging violations of his constitutional rights under 42 U.S.C. § 1983.[2] Berry requests monetary, injunctive, and declaratory relief.[3]

---

[1] R. Doc. 1. Documents filed into the record are referred to as "R. Doc. __."

[2] R. Doc. 1.

[3] R. Doc. 1, pp. 33-35.

## II.    LAW & ANALYSIS

### A.  Standard of Review

This Court is authorized to dismiss a claim by a prisoner against a governmental entity or an officer or employee of a governmental entity, or by any other plaintiff who has been granted IFP status, if the claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.[4] The screening process gives the court the ability early in the case to separate those claims that may have merit from those that lack a basis in fact or in law. Dismissal of any claim that does not pass screening may be made before service of process or before any defendant has answered. Berry has sued government officials and prison employees, so his claims must be screened.

To determine whether a complaint fails to state a claim for purposes of screening under §§ 1915(e) and/or 1915A, courts apply the same standard used for dismissal under Federal Rule of Civil Procedure 12(b)(6).[5] This means the court must accept all well-pleaded facts as true and view them in the light most favorable to Berry.[6] To survive screening, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] For a

---

[4] 28 U.S.C. §1915(e) authorizes dismissal of claims that are frivolous, malicious, or fail to state a claim where the plaintiff was granted leave to proceed *in forma pauperis* ("IFP"). 28 U.S.C. §1915A provides for dismissal of claims by prisoners against a governmental entity or employee of a governmental entity for the same reasons regardless of the pauper status of the plaintiff. Berry was granted IFP status on May 21, 2025, so both statutes apply. R. Doc. 3.

[5] *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A and Fed. R. Civ. P. 12(b)(6)).

[6] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Id.*

complaint to survive dismissal, it must contain enough factual information to raise a reasonable expectation that discovery will provide evidence of each element of the plaintiff's claim.[9]

### B. Berry Cannot State a Claim Against Westcott or Vannoy Related Only to Their Supervisory Roles

Berry named Gary Westcott and Darrel Vannoy in his Complaint but does not explain anything he believes these defendants did or did not do to commit constitutional violations against him. It appears Westcott and Vannoy were named because of their supervisory roles as the Secretary of the Louisiana Department of Public Safety and Corrections and Warden of LSP, respectively. Supervisory officials may be held liable under § 1983 only if they affirmatively participate in acts that deprive a person of his constitutional rights or implement unconstitutional policies that cause the plaintiff's injury.[10] An allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is not enough to state a claim under § 1983.[11] Further, if the supervisory official did not directly participate in an alleged constitutional violation, an inmate plaintiff must be able to show he was deprived of his constitutional rights because a subordinate applied the supervisor's affirmative wrongful policies or because of a breach by the supervisor of an affirmative duty imposed by state law.[12] To hold a supervisory official responsible based on a policy, the policy must be so deficient that it can be seen as the moving force behind the alleged constitutional violation.[13]

---

[9] *AGEM Management Services, LLC v. First Tennessee Bank Nat. Ass'n*, 942 F.Supp.2d 611, 617 (E.D. La. April 25, 2013), citing *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 255-57 (5th Cir. 2009).

[10] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

[11] *See Iqbal*, 556 U.S. at 676 (2009), citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").

[12] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[13] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Because Berry does not allege any facts to show that either Westcott or Vannoy were involved in any alleged constitutional violation, nor does Berry allege that any policy implemented by Westcott or Vannoy was the cause of the alleged constitutional violation,[14] any federal constitutional claims against these defendants should be dismissed.[15]

### C. Berry Has Stated Claims of Excessive Force Against Gorden and Smith[16]

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[17] Although "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury,"[18] cruel and unusual punishment under the Eighth Amendment does not include *de minimis* uses of physical force (in other words uses of force so minor they do not merit consideration), as long as the force used is not "repugnant to the conscience of mankind."[19] Factors to be considered in deciding whether force is excessive include

---

[14] Berry does complain of the lack of video retention policies to mandate preservation of video footage when credible claims of excessive force are made, but as explained below, Berry cannot make a claim regarding the grievance process or the disciplinary board review process, so he likewise cannot make a claim regarding the lack of policies related to those claims. R. Doc. 1, pp. 29-30. To state a claim for the failure to adopt policies, there must be allegations that indicate the defendant had actual or constructive notice that their failure to adopt policies would result in constitutional violations. *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022). Without an underlying constitutional violation, there can be no violation because of policies or the lack thereof. To the extent Berry asserts that the lack of video preservation policies emboldens officers to use excessive force (R. Doc. 1, p. 32), he has not stated how the lack of preserving video footage is the moving force behind the use of excessive force and has not provided specific facts to this point. Accordingly, this claim must fail as well.

[15] The claims for injunctive relief against Vannoy and Westcott regarding implementation of a policy for retaining video footage will also necessarily be dismissed. R. Doc. 1, p. 33.

[16] Berry already specified that Gorden and Smith are only sued in their individual capacities for monetary relief. R. Doc. 1, pp. 15-16.

[17] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992).

[18] *Wilkins*, 559 U.S. at 38.

[19] *Hudson*, 503 U.S. at 10.

the extent of injury sustained,[20] if any; the need for the use of force; the relationship between the need for force and the amount of force used; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[21]

Berry alleges that the first incidents of excessive force occurred on January 4, 2024 when Berry says Gorden restrained Berry, opened Berry's cell doors, and then "began to physically push/shove Plaintiff (in an 'unnecessary manner') while escorting Plaintiff."[22] Berry says he complied with all orders and was restrained, yet the pushing and shoving were significant enough to cause Berry to fall to the floor.[23] Once Berry fell, Gorden "pounced" onto Berry while Berry was restrained and face down on the floor, and Gorden proceeded to push one of his knees into Berry's back using most of Gorden's body weight.[24] Gorden then "thrust his fingers deep up into Plaintiff's mandible area" and violently twisted Berry's fingers.[25] Berry alleges these exact actions happened twice—once after he had fallen and a second time when Gorden stopped an attack on Berry by another inmate.[26] Though Berry does not specify what injuries he received, he notes he suffered from physical pain and generally references his injuries.[27]

---

[20] Though extent of injury is a factor to consider in determining whether excessive force was used, no arbitrary amount of injury is required to maintain an excessive force claim. *Wilkins*, 559 U.S. at 39.

[21] *Hudson,* 503 U.S. at 7.

[22] R. Doc. 1, p. 17.

[23] R. Doc. 1, p. 18.

[24] R. Doc. 1, p. 18.

[25] R. Doc. 1, p. 17.

[26] R. Doc. 1, pp. 17, 25.

[27] R. Doc. 1, pp. 20-22. The extent of injury is merely a factor to consider; however, no specific quantum of injury is required. *Hudson*, 503 U.S. at 10 (extent of injury sustained is only one factor to be considered in an excessive force analysis); *Wilkins*, 559 U.S. at 36 (the core judicial inquiry in an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm."). As the other factors support a claim of excessive force, the fact that Berry does not state his injuries with specificity at this point does not result in a failure to state a claim.

5

These allegations—that Berry was a restrained, compliant inmate, against whom force was used for no apparent reason—are enough to state a claim for excessive force.[28] Therefore, Berry has sufficiently stated a claim for excessive force against Gorden and Smith for the January 4, 2024 incidents.[29]

Second, Berry alleges that Smith "discharged a lengthy burst of pepper-spray, despite Berry's compliance with orders.[30] Again, Berry alleges that he was compliant, and force was used for no apparent reason. This is a classic claim of excessive force and should proceed.[31]

### D. Berry Has Stated Claims for Failure to Protect Against Gorden; Not Smith

Berry notes two separate occasions where he was attacked by two different cell mates—one on January 4, 2024 and another on January 6, 2024.[32] Under the Eighth Amendment to the

---

[28] *Santander v. Salazar*, 133 F.4th 471, 480-81 (5th Cir. 2025) (allegations of being violently shoved in the back by a guard when the inmate had his back turned and was not resisting were sufficient to state a plausible claim of excessive force and to survive assertion of qualified immunity; importantly, the initial, unnecessary shove was sufficient to state a claim and survive an assertion of qualified immunity). In the second instance, though Gorden was breaking up a fight between Berry and the other inmate, the allegations are that Berry was restrained, and it does not appear there would have been any reason for Gorden to put his knee on Berry's back and press his weight into Berry, as Berry was restrained and complying with orders, though he was forced to defend himself from the other inmate. R. Doc. 1, p. 25.

[29] *See Aucoin v. Cupil*, No. 16-373, 2018 WL 1547347, at *3 (M.D. La. Mar. 29, 2018) (noting that "at the time of the incident, it was clearly established that inmates have a constitutional right to be free from the use of excessive force, and it is objectively unreasonable to assault a compliant and restrained inmate."). Though the Court cannot address qualified immunity on screening, the rationale of *Aucoin* likely forecloses the qualified immunity defense on a motion to dismiss.

[30] R. Doc. 1, p. 26.

[31] Berry does not appear to be making claims for failure to intervene on the part of either Gorden or Smith in the uses of excessive force perpetrated by the other defendant, as he does not provide details, such as if either defendant was present for the uses of force or where either Gorden or Smith were located when the other use of force occurred. R. Doc. 1. In the event Berry wishes to bring such claims, he should file an amended complaint, explaining all facts relevant to a failure to intervene claim, such as where the potential intervenor was located and how long the constitutional violation occurred. It also does not appear Berry intends to make a claim for deliberate indifference to a serious medical need, as he does not indicate he had any medical problem that went untreated after his vital signs were checked, and he was prescribed pain reliever (*i.e.* he was treated). R. Doc. 1, pp. 22, 28. Berry cannot state a claim for the lack of a shower after the chemical agent was used. *Pea v. Cain*. No. 12-779, 2014 WL 268696, at *7, n. 7 (M.D. La. Jan. 23, 2014) ("a failure to allow an inmate to shower after an application of irritant spray is not the type of wrongdoing that rises to the level of deliberate indifference.").

[32] R. Doc. 1, pp. 23-24 & 28-29.

United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates.[33] Although prison officials generally "have a duty ... to protect prisoners from violence at the hands of other inmates,"[34] "[p]rison officials are not . . . expected to prevent all inmate-on-inmate violence."[35]

"Deliberate indifference" is the standard applied in evaluating a failure to protect claim. An official acts with deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk.[36] A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to avoid it.[37] In other words, to be liable for deliberate indifference, the prison official must want to cause the plaintiff harm or at least show a conscious or callous disregard to the plaintiff's right to be protected from such harm.[38] The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.[39] Mere negligence or the "failure to alleviate a significant risk that [the official] should have perceived but did not" are insufficient to establish a failure to protect claim.[40] Deliberate indifference requires a level of awareness of a specific risk based on specific information. General

---

[33] *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).

[34] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

[35] *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir 2003).

[36] *Id.*

[37] *Id.*

[38] *Johnston*, 786 F.2d at 1259.

[39] *Farmer*, 511 U.S. at 837.

[40] *Id.* at 838. *See also, Domino v. Texas Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001), citing *Farmer*, 511 U.S. at 838.

knowledge of general dangerousness or the like is also not enough to support a failure to protect claim.[41]

On January 4, 2024, when Gorden was escorting Berry to his new cell, Gorden allegedly said to Berry "I f**ked up your hands up so as to also put you at a disadvantage when you'll have to fight this 'crazy mother-f**ker' we'll be placing you in the cell with."[42] When Berry arrived to his new cell, Gorden instructed the inmate in the cell to come to the bars to be restrained, to which the inmate stated "y'all know I'm not supposed to be having a cell-mate housed with me."[43] The inmate eventually complied, and when Berry was put into the cell, the other inmate struck Berry with a closed fist.[44] Berry was still restrained and attempted to defend himself by kicking the other inmate.[45] Berry was then taken down by Gorden, as described above relative to the second incident of excessive force by Gorden, and removed from the cell.[46] Though Berry's allegations are scant, he alleges sufficient information to demonstrate that Gorden knew the inmate in the cell posed a threat to Berry and placed Berry in the cell despite this, or even worse, with the intention that the inmate would harm Berry. This is indicated by Gorden's alleged statement to Berry that demonstrates Gorden knew Berry would have to fight the inmate.[47] At the pleadings stage, the Court must read the Complaint in the light most favorably to Berry, and Gorden's statement, as

---

[41] *Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019). *See also Van Williams v. Samaniego*, No. 05-491, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007) (citation omitted) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").

[42] R. Doc. 1, p. 23.

[43] R. Doc. 1, p. 23.

[44] R. Doc. 1, pp. 24-25.

[45] R. Doc. 1, p. 25.

[46] R. Doc. 1, pp. 25-26.

[47] R. Doc. 1, p. 23.

8

alleged by Berry, is sufficient to demonstrate that Gorden was aware of a specific risk to Berry posed by the inmate in the cell. Therefore, this claim should proceed.

Defendant Smith was also involved in the first incident of failure to protect, but there are not facts to indicate that Smith had the subjective state of mind required for a failure to protect claim.[48] Rather, Smith was a largely passive participant in the transfer, until he threatened to pepper spray the "crazy" inmate in the cell unless he allowed the officers to place Berry in the cell.[49] Nothing in the facts indicates Smith had any knowledge that the inmate in the cell posed a specific risk to Berry. General knowledge that an inmate is "crazy" or has violent tendencies, "without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference."[50] The statement to Smith and Gorden by the inmate that "y'all know I'm not supposed to be having a cell-mate housed in a cell with me," relays, at best, an indication that the inmate may be generally dangerous—but that is insufficient to show that Smith should have drawn the inference that a specific risk was posed to Berry by the inmate.[51] Accordingly, Berry's failure to protect claim against Smith fails.

Gorden then placed Berry in another cell with a different inmate "of the same 'crazy mother-f**ker' type," despite Berry's protests.[52] Berry alleges Gorden told Berry to get in the cell and "get it how you live because this is the way it's going down…."[53] Approximately 38 hours after Berry was placed in the cell, Berry says his new cellmate attacked Berry without

---

[48] R. Doc. 1, p. 23.

[49] R. Doc. 1, p. 24.

[50] *Van Williams*, 2007 WL 9701460, at *3 (citation omitted); *see also Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019).

[51] R. Doc. 1, p. 23.

[52] R. Doc. 1, p. 27.

[53] R. Doc. 1, p. 27.

9

provocation.[54] The attack resulted in Berry sustaining a sprained ACL.[55] Because it appears Gorden

made similar statements to Berry regarding Berry's need to fight the cellmate with which Berry

was placed, Berry states a claim against Gorden for this instance of failure to protect for the same

reasons as stated above.

### E.  Berry Cannot State a Claim for Lack of Video Footage at the Disciplinary Board Hearing

It is unclear if Berry is attempting to bring a claim related to the disciplinary board process,

but to the extent he is, he cannot state a claim.[56] The procedures for prison disciplinary proceedings

do not implicate any constitutionally protected liberty interest unless the resulting punishment has

subjected an inmate to an atypical and significant deprivation (evaluated in the context of prison

life) in which the State might conceivably have created a liberty interest for the benefit of the

inmate.[57] Berry's Complaint does not indicate if he was subjected to punishment at all or state what

he was charged with, and there is no liberty interest in having video tape reviewed, much less

preserved after, these proceedings.[58] Accordingly, this claim should be dismissed.[59]

---

[54] R. Doc. 1, p. 28.

[55] R. Doc. 1, p. 29.

[56] R. Doc. 1, p. 29.

[57] *Sandin v. Conner*, 515 U.S. 472, 486 (1995).

[58] *Bustamante v. Director, TDCJ-CID*, No. 08-458, 2009 WL 1812783, at *1 (E.D. Tex. June 25, 2009) ("claim that the grievance officials did not review the video tape failed to implicate a constitutionally protected liberty interest.").

[59] To the extent Berry is complaining of the lack of preserved video footage for the grievance process, the analysis and conclusion are, essentially, the same. Inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when officials fail to do so. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Because Berry has no constitutional right regarding the grievance process, any claim related to lack of preserved video footage related to the grievance process is necessarily without merit.

### F.  Berry Has Not Sufficiently Stated Conspiracy or Retaliation Claims

"Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983."[60] And while "well-pleaded facts [must be accepted] as true and view[ed] in the light most favorable to the plaintiff, a complaint 'that offers labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement' is not plausible for purposes of Rule 12(b)(6)."[61] Nor must this Court accept as true "unwarranted factual inferences."[62] As the Fifth Circuit explained, in order for Plaintiff "to establish [his] conspiracy claim, [he] must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights."[63]

Berry alleges the uses of force by Gorden noted above were "executed at the behest of 'unnamed' LSP high-ranking officials…due to Plaintiff's reputation for being accused of committing 'a particular rule-infraction' and for being litigious."[64] Berry's conclusory allegation of an agreement between Gorden and unknown "high-ranking officials" to violate Berry's constitutional rights is insufficient to state a claim of conspiracy. Because the claim lacks the specific facts necessary to state a claim, the bald allegations of conspiracy should be dismissed.

Claims of retaliation by prison inmates are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a state penal institution.[65] To state a claim for retaliation, a prisoner must allege the following: (1) that he was exercising or

---

[60] *Montgomery v. Walton*, 759 Fed.Appx. 312, 314 (5th Cir. 2019).

[61] *Id.* at 314, citing *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

[62] *Howard v. Dixie Dunavant Ins. Agency*, 227 Fed.Appx. 363, 365 (5th Cir. 2007), quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[63] *Montgomery*, 759 Fed.Appx. at 314.

[64] R. Doc. 1, p. 30.

[65] *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

11

attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis* (minor)*,* was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.,* that "but for" the retaliatory motive, the adverse action would not have occurred.[66] The inmate must allege more than a mere personal belief that he is the victim of retaliation.[67] Furthermore, the inmate "must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred."[68]

Berry notes he was retaliated against for being "litigious," and while there is a constitutional right to bring grievances and lawsuits,[69] Berry has not demonstrated intentional retaliation or causation. To establish either of those elements, Berry would have to successfully allege a conspiracy, which, as explained above, he has not done.[70] Accordingly, the claim of retaliation must also fail.

### G. Exercise of Supplemental Jurisdiction Over Potential State Law Claims Should be Declined

To the extent that Berry's allegations may be interpreted as a request for this Court to exercise supplemental jurisdiction over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues

---

[66] *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999).

[67] *Mitchell v. Thomas*, No. 17-90, 2017 WL 11628577, at *4 (M.D. La. Nov. 21, 2017), report and recommendation adopted, No. 17-90, 2017 WL 11628576 (M.D. La. Dec. 6, 2017), citing *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

[68] *Woods*, 60 F.3d at 1166.

[69] *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017) (officials may not retaliate against a prisoner for exercising their constitutional rights, including a prisoner's First Amendment right to file grievances, as retaliation has the potential to discourage exercising that right).

[70] Berry has also given no indication that either Smith or Gorden were parties to any other lawsuits or grievances filed by Berry that could have potentially given them direct motivation to retaliate against Berry. R. Doc. 1.

12

of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[71] Any state claim arising from the facts of this case would require a wholly different analysis than the remaining federal claims, so it is appropriate to decline supplemental jurisdiction over any potential state law claims.[72]

### H.  Leave to Amend

Though "[o]rdinarily, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed…[g]ranting leave to amend…is not required if the plaintiff has already pleaded her best case."[73] Berry's original Complaint is lengthy, and it appears he has already pleaded his best case, so leave to amend is not recommended To the extent Berry believes he can allege facts to support any claims for which dismissal is recommended, he can state those facts in any objection filed.

### RECOMMENDATION

**IT IS RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over potential state law claims and that the following federal claims be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim based on screening under 28 U.S.C. §§ 1915(e) and 1915A: all claims against Gary Westcott and Darrel Vannoy; the claim for failure to protect against William Smith; claims related to preservation of video footage for disciplinary board proceedings and/or the grievance process; and all claims of conspiracy and retaliation.

---

[71] 28 U.S.C. § 1367.

[72] For example, the excessive force claim may include a state claim for battery, but such a claim requires a wholly different analysis than the federal claim for excessive force.

[73] *Wiggins v. Louisiana State University—Health Care Services Division*, 710 Fed.Appx. 625, 627 (5th Cir. 2017) (internal quotation marks omitted).

13

**IT IS FURTHER RECOMMENDED** that this matter be referred to the magistrate judge for further proceedings on the remaining claims: (1) declaratory and monetary relief against Johnnie Gorden for the alleged incidents of excessive force occurring on January 4, 2024 and the alleged failures to protect occurring on January 4, 2024 and January 6, 2024 and (2) declaratory and monetary relief against William Smith for the alleged act of excessive force involving chemical agent on January 4, 2024.

Signed in Baton Rouge, Louisiana, on June 29, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

14